IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

G.B., Z.L., through his guardian
K.L., J.H., and M.R.,

    Appellants,

v.

AGENCY FOR PERSONS WITH
DISABILITIES,

    Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D13-4903

Opinion filed July 21, 2014.

An appeal from an order of the Division of Administrative Hearings.

Gigi Rollini of Messer Caparello, P.A., Tallahassee, Cynthia A. Mikos of Allen Dell, P.A., Tampa, for Appellants.

David A. Yon and Donna E. Blanton of Radey Law Firm, Richard D. Tritschler, General Counsel and Brian McGrail of Agency for Persons with Disabilities, Tallahassee, for Appellee.

VAN NORTWICK, J.

    G.B., Z.L., through his guardian K.L., J.H., and M.R., appellants, challenge

a series of rules (the Proposed Rules) promulgated by the Agency for Persons with

Disabilities (the Agency). See Fla. Admin. Code R. 65G-4.0210-65G4.027. The

Agency's Proposed Rules implement the Legislature's new iBudget Statute. See §

393.0662, Fla. Stat. (2010). The iBudget Statute redesigned Florida's system governing the amount, duration and scope of health and other services provided to persons with developmental disabilities under Florida's Medicaid Developmental Disabilities Waiver funding system, known as the "D.D. Waiver Program." Id. An Administrative Law Judge found the Proposed Rules permissibly implemented the iBudget Statute. Because we find the Proposed Rules contravene the specific requirements of the Legislature in the iBudget Statute, we reverse.

*Background*

The record reflects that each of the four individual appellants receive services under the DD Waiver. For example, appellant Z.L. is a 26-year-old male who was born with Cri-du-Chat syndrome, a fifth chromosome abnormality. As a result, Z.L. is low-functioning, with a non-measurable IQ level (below the level at which mental retardation can even be designated). Z.L. speaks only a few words, communicates with some sign language, and is ambulatory, but totally depends on others for all aspects of daily living. Z.L. also has extreme behavioral issues, including self-abuse and physical abuse of others.

Z.L. lives at home with two other developmentally disabled men. The home where they reside belongs to the family of K.L. (Z.L.'s father and legal guardian), allowing Z.L. and the other two men with DD Waivers to rent the home at less than its actual market value. The services Z.L. receives under the DD Waiver to

2

live in this home and avoid more costly institutionalization include 24-hour assistance with daily living activities; behavioral analysis through a certified behavior analyst, and personal care assistance.

Prior to the adoption of his iBudget, Z.L.'s cost plan (the amount paid under the DD Waiver for services provided to Z.L., which services were determined by APD to be medically necessary) totaled $61,824.22. The record shows that if the iBudget system were implemented as set forth in the Proposed Rules, Z.L.'s cost plan will be reduced by $8,175.98. Appellants assert that such a reduction would prevent Z.L. from being able to afford to maintain his current level of services in order to remain in his home. Appellants argue if Z.L. cannot remain in his home, where he (like his roommates) is able to pay reduced rent because the home is owned by a family member, Z.L. would have to be institutionalized. Z.L. cannot live in his parents' home because his mother suffered a closed head injury in a bicycle accident, is incapable of defending herself in the event Z.L. acts aggressively toward her, and another traumatic injury to her head could be fatal.

If the rules are upheld, each appellant will be transitioned to the iBudget system set forth in the Proposed Rules. Like Z.L., the other three individual appellants have also received iBudget reduction notices. G.B.'s existing cost plan reduction will be $5,376.40. M.R.'s proposed iBudget reduction is $6,524.16. J.H.'s existing cost plan reduction will be $3,769.49.

3

Appellants timely filed their Petition for Administrative Determination of Invalidity of Proposed Rules 65G-4.0210 through 65G-4.027 on May 16, 2013, ten days following the final public hearing.  See § 120.56(2)(a), Fla. Stat.

*The iBudget Statute*

Section 393.0662, Florida Statutes, creates a new system to distribute funds under the DD Waiver Program.[1]  The Legislature created the new system based on individual budgets, or "iBudgets" for each DD Waiver client for the express purpose of affording greater flexibility for clients and families to choose services within the limit of an established budget.  § 393.0662, Fla. Stat.  The statute instructed the Agency to develop "an allocation algorithm and methodology" for use in developing each client's budget.  § 393.0662(1)(a), Fla. Stat.  The Legislature mandated that the algorithm "use variables that have been determined by the agency to have a statistically validated relationship to the client's level of need for services."  Id.  Importantly, the Legislature then clearly required the algorithm be the sole mechanism to set a client's iBudget, with one exception:  "A client's iBudget shall be the total of the amount determined by the algorithm and

---

[1] The iBudget Statute replaced a tier system design for delivering home and community based services for persons with developmental disabilities.  See § 393.0661, Fla. Stat. (2007).  This Court invalidated the Agency's proposed rules for the tier system in Morehead v. Agency for Persons with Disabilities, 19 So. 3d 1009, 1012-13 (Fla. 1st DCA 2009).  In Morehead, the Court determined the Proposed Rules imposed criteria beyond that found in the enabling statute and failed to assign clients to the correct DD Waiver budget tier based on the methods set forth in the statute.  Id. at 1012.

4

any additional funding provided pursuant to paragraph (b)." § 393.0662(1)(c), Fla. Stat. Pursuant to paragraph (b), the algorithm could be increased if a client had one or more particular needs that could not be accommodated within the funding as determined by the algorithm. § 393.0662(1)(b), Fla. Stat. (listing extraordinary need, significant need for one-time or temporary support or services, and significant increase in need for services after the beginning of the service plan year as the three paragraph (b) additions).

*The Proposed Rules*

The Proposed Rules promulgated by the Agency created an algorithm. Fla. Admin. Code R. 65G-4.0210(2)-(2)(b). The Proposed Rules also created a review process whereby each client's algorithm amount could be adjusted. See Fla. Admin. Code R. 65G-4.0210(3), (7), (19), 65G-4.0212. This independent review process involved an allocation of algorithm amounts, further target allocations, allocation implementation meetings, and extraordinary needs reviews. See Fla. Admin. Code R. 65G-4.2012. The Proposed Rules also called for a reduction of the algorithm amount where the amount exceeded an existing client's former annualized cost plan amount; if this occurred, the algorithm amount was reduced to the former cost plan. See Fla. Admin. Code R. 65G-4.2012(2)(a). And, finally, the Proposed Rules created supplemental funding when a client showed significant need or significant increase in need for services since the beginning of the plan

year. Fla. Admin. Code R. 65G-4.027(2)-(5). As the Agency witnesses testified below, the algorithm the Agency created was just the beginning of its allocation process.

*Analysis*

An agency may not propose or create a rule that "enlarges, modifies, or contravenes the specific provisions of . . . the language of the enabling statute." § 120.52(8)(c), (9), Fla. Stat. It is not enough that the Agency's rule is "reasonably related" to the Legislature's purpose or statutory provisions. § 120.536(1), Fla. Stat. The Agency's rule and interpretation must comport with the specific authorizing statute. § 120.536(1), Fla. Stat.; State, Dep't of Children & Family Servs. v. I.B., 891 So. 2d 1168, 1171 (Fla. 1st DCA 2005) ("No agency shall have authority to adopt a rule only because it is reasonably related to the purpose of the enabling legislation . . . or [] within the agency's class of powers and duties."). The rule must comply with the Legislature's particular requirements. Moreland, 19 So. 3d at 1011-13.

Here, the Legislature was clear: the algorithm is the sole mechanism to set a client's iBudget, save for three exceptions specifically delineated by statute. § 393.0662(1)(c), Fla. Stat. In contravention of this clear requirement, the Proposed Rules use the algorithm, instead, as merely a starting point. The algorithm amount is then put through various modification mechanisms—none of which are

6

contemplated by the clear statutory mandate that the "iBudget shall be the total of the amount determined by the algorithm and any additional funding provided pursuant to paragraph (b)." Id.

Further, the use of the review mechanisms to decrease the algorithm amount contravenes the iBudget Statute. Nowhere in the statutory language does the Legislature contemplate decreasing the algorithm amount. The Legislature directed the algorithm be the floor and then permitted increases to that algorithm amount based on three delineated circumstances. Id. ("A client's iBudget shall be the total of the amount determined by the algorithm and any additional funding provided pursuant to paragraph (b)."). For sure, clients are required to "use all [other] available services" prior to "using funds from his or her iBudget to pay for support and services." § 393.0662(4), Fla. Stat. But this does not decrease a client's iBudget by the amount of other services; instead, it merely requires clients *use* those other services before paying for them with their already-allocated iBudget funds. And finally, the Proposed Rules provide for a one-time assessment. The iBudget Statute contemplates more, as it intends for an ongoing process and assessment of client needs.

In sum, the Proposed Rules directly conflict with and contravene the Legislature's clear language.[2] We recognize the difficulty in adhering to the

---

[2] Based on this resolution, we need not address appellants' issues regarding the

7

Legislature's command to create an algorithm solely capable of determining each client's level of need. Further, we accept that APD is attempting to find a reasonable way to administer funds to the tens-of-thousands of people in need that it assists. However, when, as here, the Legislature is clear, there is no room for deviation.

Accordingly, because the Proposed Rules conflict with the requirements of the statute, we REVERSE the ALJ's order finding the Rules valid.

BENTON and OSTERHAUS, JJ., CONCUR.

---

$1,000 buffer and Statement of Estimated Regulatory Costs.